## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

REBECCA METZINGER,    )
    )
    Plaintiff,  )
    )     No. 23-cv-332
    )     (Judge Molly R. Silfen)
    )
THE UNITED STATES,    )
    )
    Defendant.  )

## SECOND AMENDING  COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Rebecca Metzinger ("Dr. Metzinger") and AMENDS AND SUPPLEMENTS the First Amending Complaint as follows:

60.

The allegations of the First Amending Complaint (Equal Pay Act Claim) (Doc.98) including, but not limited to allegations of venue, jurisdiction and identification of the parties, and damages,  are incorporated herein as if expressly set forth. Numbering of the paragraphs in this Second Amending complaint follow with the last number of the First Amending Complaint.

61.

Plaintiff hereby supplements her First Amending Complaint to provide additional facts supporting her claim to "Willfulness" and "Lack of Good Faith" as entitling Plaintiff to extension of  the statute of limitations"  under 29 U.S.C.255(a) and liquidated damages under 29 U.S.C. 216(b) of the FLSA.

62.

In 1974 Congress extended the reach of the FLSA to federal employees, see Fair Labor Standards Act of 1974, Pub.L.No.93 -259,Sec6, 88 Stat.55 and authorized the Office of Personnel Management to administer the FLSA for federal employes in a manner consistent with the Department of Labor's (DOL) administration of the Act for the private sector, 29 U.S.C. Sec.204(f).  The Equal Pay Act, §206 (d)Prohibition of Sex Discrimination, is also an amendment to the FLSA.

63.

"Willfulness"  is defined as intentional, knowing, or reckless disregard for the matter of whether its conduct was prohibited under the Act)  see e.g. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (ADEA case). Facts  meeting  the criteria established by the Federal Circuit for imposition of a three year as opposed to a two-year limitation on filing, for "willfulness" are set forth in the First Amending Petition in the section entitled Facts Supporting Retaliation/Reprisal beginning at ¶48 on p.26 and ending at ¶52 of Doc. 98. Those facts are relevant to both claims and are incorporated herein as if expressly set forth.

64.

"Remedies" are separately set forth in FLSA provision, 29 U.S.C §216 which includes "double the damages" i.e. liquidated damages under 216(b) – a standard governed by the *absence of good faith* (not willfulness).

> The statute states:
> any employer who **violates** the provisions of Section 206 or Section 207 of this Title **shall** be liable to the employee or employees affected in the amount of their unpaid minimum wages,[1] or their unpaid

---

[1] Note, Equal Pay Act Amendment to the FLSA at §206 d **(3)** provides "For purposes of administration and enforcement, *any amounts owing to any employee* which have been withheld *in violation of this subsection* shall be deemed to be *unpaid minimum wages or unpaid overtime compensation* under this chapter." (emphasis supplied)

overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. 29 U.S.C. Section 216(b).

65.

§216 (b) additionally states:
The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action...

66.

*Liquidated Damages Owed Unless Government Bears Burden to Prove Good Faith:* §260 of the Portal to Portal Act provides employers with a defense to the otherwise mandatory liquidated damage provision of 216(b) of the FLSA – proof of good faith-- and permits the District Court, in its sound discretion, to award no, or less, liquidated damages in the event the employer can show good faith and a reasonable grounds to believe his act or omission was not a violation. 29 U.S.C. 260. *Id.* at 128-129.

In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C. 201 et seq.], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.[2]

67.

The employer must meet the "*plain and substantial* burden of persuading the court by proof that his failure to obey the statute was both in good faith predicated upon such reasonable grounds that it would be unfair to impose upon him more than

---

[2] May 14, 1947, ch. 52, § 11, 61 Stat. 89; Pub. L. 93–259, § 6(d)(2)(B), Apr. 8, 1974, 88 Stat. 62.)

a compensatory verdict" that the employer had reasonable grounds for believing that the act or omission was not a violation of the Equal Pay Act.  Payroll not met because of government shutdown and the application of the Anti-Deficiency Act is an exception.[3] Otherwise, an award of liquidated damages is "mandatory." *Braswell v. City of El Dorado*, 187 F.3d 954, 957 (8th Cir.1999).

68.

*Liquidated Damages under the FLSA is Based on <u>Date of Violation</u> i.e. the date a discriminatory Payroll Check was actually received*:

The "violation" giving rise to her entitlement to liquidated and other damages arose on the date or dates  that Dr. Metzinger failed to receive the pay day to which she was legally entitled to *if   the Government employer had actually been legally in complince with the  FLSA (and its amendment Equal Pay Act). The exception is  pay that is delayed due to a Government shut down[4]* and concurrent imposition  of the Anti-Deficiency Act. Otherwise, the FLSA minimum wage provision (which covers other legally required pay under §206 d **(3)** ) requires "on time" payment, and plaintiff is entitled to liquidated damages under the Act. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945) (held, even if there was an agreement with his employer in which he waived his rights to such damages).  In other words, an FLSA claim accrues, for limitation purposes, when an employer fails to pay workers on their regularly scheduled pay days, and a violation of the Act occurs on that date. *Biggs v. Wilson*, 1F.3d 1537, 1540 (9th Cir. 1993).  *See also*, *Cook v. United States*, 855 F.2d 848,851

---

[3] *Martin v United States,* 54 F.4th 1325 (Fed.Cir.2022).

[4] *Martin v. United States* 54 F.4th 1325 (Fed. Cir 2022) (reversing in part, vacating in part and remanded), petition for cert. denied, relieving the Government of the legal obligation to pay liquidated damages because the Anti- Deficiency Act bars the government from making payments during a shut down.

(Fed. Cir. 1988)("[i]f an employer on any regular payment date fails to pay the full amount due an employee, there immediately arises an obligation upon the employer to pay the employee … liquidated damages").  That being said,  "once there has been a decision that the Employer willfully violated the Equal Pay Act, the court has no discretion not to award liquidated damages. *EEOC v. City of Detroit Health Dept., Herman Kiefer Complex* 89-2337, 920 F.2d 355 (6th Cir. Nov. 30,1990)(reversing and remanding district court's refusal to award liquidated damages).

69.

Further, the liquidated damages provision is not penal in its nature but compensation for the retention of pay which might result in damages too obscure and difficult of proof to estimate other than by liquidated damages.  *Brooklym Sav. Bank v. O'Neill,* 324 U.S. 697,706 (1945) citing H.Rep. No. 2738, 75th Cong., 3d Sess., pp.1.13.21 and 28.[5]

70.

Under DOL rules, which are persuasive in the absence of specific OPM regulations on point, the cause of action for liquidated damages accrues when the employer fails to pay the required compensation for any workweek at the regular  pay day for the period in which the workweek ends. 29 C.F.R. 790.21 (b), quoted in *Martin v. The United States,* No. 13-834C p. 8 (U.S. Ct. Fed. Cl. filed July 31, 2014).

71.

**Item 1:  In August 2024 the Agency Fabricated False Market Pay Panel Reports  to Buttress the Government's argument and to refute Dr. Metzingers Evidence of  Willfulness Presented to the Court on July 8,**

---

[5] Quoted in *Martin v. United States*, 54 4th Cir.1325 (Fed.Cir. 2022) (dissent Hughes).

**2024; and to Demonstrate to this Court that Dr. Metzinger was not Entitled to Back Pay or Liquidated Damages.**

72.

On July 18, 2024 Plaintiff provided information in Doc. 117, pp. 18-22, in response to the Court's order, regarding the following:

a) the VA's salary spreadsheet provided on November 17, 2017 from VA EEO officer Karen James who Dr. Metzinger that deliberately failed to provide the accurate historical evidence that Dr. Metzinger requested, and under reported others take home pay inconsistent with their actual salaries from the SF 50s produced nearly two years later under threat of subpoena.

b) The VA knew that on January 10, 2016, Dr. Metzinger's pay had been increased from 2008 only by step adjustments and cost of living adjustments from her initial starting salary of 240,000 in 2008 as Chief of the Section were mandatory pay increases.to 261,745 dollars. See Ms. James' 2017 email and spreadsheet in this record. Doc. 117-2,pp.15-17 (November 15, 2017 email attaching Ophthalmology Section spreadsheet, also part of RM-103788, EEOC Report of Investigation at pp. 000224-233), with written explanation in this matter at Doc. 117 (pp.20-21). The James salary spreadsheet (as Dr. Metzinger explained in July 2024 in Doc. 117, p. 20 of 27, item 9), prominently (and wrongly) shows Dr. Metzinger as earning 300,000 dollars in 2016–more than any other physician including all the males in her department-- which was not true.

c) The VA manipulated physician salary numbers to indicate, falsely, that the males were paid lower than the females. It showed, for example, Dr. Diamond at a wage of 235,000 dollars in 2009 and stated a "current wage" 289, 145 dollars. By October 26, 2011, Dr. Diamond (a Tier II, not Tier 1 as indicated by the V.A. ) had been given an annual salary of 305,317 dollars. Dr. Carriere, who only worked in the clinic, and does not perform surgeries was paid 251, 482 dollars. The third comparator in Dr. Metzinger's claim – Dr. Jaramillo (male) was shown as "current" wage of only 150,000 dollars. Dr. Jaramillo started on September 23, 2012, at a salary of 247,000 dollars. The VA had bumped Dr. Jaramillo's salary up, by market pay review, so that by January 10, 2016, Dr. Jaramillo was making 253,335 dollars, not the 150,000 dollars as the VA showed on the spreadsheet provided November 15, 2017. On the date of the spreadsheet Dr. Jaramillo was being paid 279,413 dollars. Dr. Carriere's (who works clinic and without performing surgeries) actual wage was also higher than that presented.

d) During the EEOC litigation VA senior  Human Resources("HR") officials, acknowledged that the VA  was aware that there were five bi- annual market pay reviews that were owed to but not received by Dr. Metzinger (in 2009, 2010, 2012, 2014 and 2016).    The records received in discovery demonstrated that the male staff physicians including comparators, Dr. Jaramillo, Diamond, and Vincent (the latter subsequently fired for malpractice) had received Market Pay reviews. A Market Pay Panel was conducted on Dr. Diamond's behalf as early as November 6, 2009 and in years thereafter. He also received incentive and retention bonuses.  New Orleans Assistant Chief of Human Resources Officer Debbie Richard testified to a market pay panel convened in 2009 for Dr. Diamond and Dr. Metzinger (without being able to provide any document proving a panel was convened for Dr. Metzinger.) (Excerpts of Ms. Richard's testimony is in the court record at Doc. 117-3, pp.49-100) However, she admitted that the male comparator, Dr. Diamond received a 30,000 dollar wage increase in that year and Dr. Metzinger got nothing. Ex. A. Richard Dep. additional excerpt, p. 141 -142 (attached).

e) Dr. Smith, the Chief of Surgery responsible for convening the reviews-- had convened Market Pay Panels for the male physicians including in
Or about January 2016 – but he did not convene one for Dr. Metzinger. Instead, as set forth in Doc.98, pp.25-30 (First Amended Complaint)  he began a campaign to harass Dr. Metzinger into stepping down as Section Chief.  See, Exhibit attached. Excerpts Darvon Thomas, Dep. May 21, 2019.

f) Not until more than two  months **AFTER** she commenced her  formal action directly in EEOC  (more than three months AFTER she complained to New Orleans VA  of the discrepancy in pay on May 22, 2017),  did Dr. Smith convene the very first  bi-annual market pay panel  conducted on her behalf. (Doc. 117-4,  Form 10-0432A signed August 28, 2017).  The five member panel  approved  a market pay salary increase (of approximately 40,000 dollars)  on **August 28, 2017 to bring her pay to 300,0**00.00. That pay panel document did not state it was retroactive. The document itself was  not produced in discovery,  nor made available in her eOPF record, nor provided by the Agency officially to Dr. Metzinger, even after she began pursuing the wage discrimination claim.  She only obtained a copy more than two years later on January 3**, 2019,**  from Katina McGinnis an employee in VA  Human Resources, who was a compensation specialist at the time. Doc.126-4, pp 1-4 (Jan.3, 2019 McGinnis to Metzinger email and attachment).

Those and other allegations and records made part of  Doc.117 are included herein as

if expressly set forth.

73.

On that date, July 18, 2024 in doc. 117 Dr. Metzinger further explained how the Agency, and in particular her supervisor, Chief of Surgery, Dr. Smith, knew that Ms. James' production was false.  The Report of Investigation by ORM issued on November 5, 2018, in the EEOC litigation revealed that the New Orleans V.A. had the correct salary numbers from the initiation of the Metzinger claim filed in 2017. Contained within the ROI was p.00234, an email between David Hurley and Nathan Dion (Dr. Smith's assistant Chief) which shows the pay actually in effect for each of the physicians on August 22, 2017. This email reveals that Dr. Smith's assistant chief *knew* that Dr. Metzinger was paid lower than the three comparators she identified as all males.

74.

The testimony of HR Supervisor in the New Orleans VA, Mr. Darvon Thomas, excerpts attached hereto evidences that  in her meeting in person with  him at the New Orleans VA on May 22, 2017 complaining  that she had come to believe she was being paid less than males in her section working under her supervision (Dep. 47) she also complained of

a) repeated harassment by her supervisor Dr. Smith, the Chief of Staff, Dr. Schapira, and a male physician she supervised,  Dr. Diamond, as well as having received an unjust adverse annual assessment,  in order to get her to quit her position as Chief of the Ophthalmology Section. (Ex.1 Dep. May 21, 2019, Pp.28,30,37-38,40);

b) Dr. Smith (p.40) and Chief of Staff Dr. Schapira (p.62) in Spring 2017 had complained to him about Dr. Metzinger in April, May 2017 and their desire to have her step down, but neither gave him anything to back it up although he requested something in writing and a report. P.58,62. No one else had ever made a complaint. (p.62).

75.

Mr. Thomas advised her to commence a EEO complaint with the EEO representative Karen James (p.30,48,51).  Dr. Metzinger received no support from New Orleans EEO representatives Karen James or her assistant Lisa Cole in May or June of 2017 to whom she was referred by Mr. Thomas to file a claim. Ex. B Dep. Thomas Excerpts (Dep.Ex.8).  Karen James reports directly to the VA director. This induced Dr. Metzinger to contact the EEO hotline on Jun 20, 2017, and file formally with them her formal claim under the Equal Pay Act in the EEOC respecting wage discrimination based on sex and hostile work environment. After the litigation was well underway, VA Attorney Powell  supplied at Mr. Thomas' deposition  on May 21, 2019, a record   entitled "Metzinger's Retro Market Pay " (Exhibit   Thomas test.attached,  Dep. Ex. 2) purportedly showing the full  calculations over the two years following. Mr. Thomas stated, "It still hasn't happened but it's apparently in the works."  p. 23.

76.

On July 8, 2024, Dr. Metzinger in July 2024 quoted in this record a document received by virtue of the EEOC's own Record of Investigation (ROI) completed in

2019. That document was an email between  Ms. Katrina McGinnis, (after Karen James retired) *to New Orleans VA legal defense counsel Ms. Power,* admitting to the violation and the fact that even as of February 22, 2019 Ms McGinnis had not received the panel form:

> Dr. Metzinger was due her bi-ennial Market Pay Review MPR on 6/26/2016. However, the Surgery Service submitted the MPR late, September 2017." She also stated "after multiple requests from HR to the Surgery Service the Market Pay Review Form was submitted to me for review on 2/22/2019 and reviewed on 2/28/2019. A concurrent recommendation was made to increase Dr. Metzinger to 312,000.000, however it is with COS for the Director approval as of 3/29/2019.

Quoted in Doc.117, p.23.

77.

The "Surgery Service" referred to by Ms. McGinnis is a reference to Dr. Smith –the Chief and Dr. Metzinger's boss – who was the subject of Dr. Metzinger's  Title VII and Equal Pay Act complaint as he was the one responsible for convening market pay panels and her evaluations and it was he who had bullied her to quit her position.

On July 8, 2024, the Court of Federal Claims held an oral argument on the Government's Motion to Dismiss under R. 12 for lack of jurisdiction.  At that time the Court ordered Dr. Metzinger's counsel to provide certain information and records listing four areas. Doc.116,p.2.   The Court also  ordered  that the Parties engage in settlement discussions every thirty days *regarding all of the claims*, in both the Court of Federal Claims and the Louisiana Eastern District, including the Title VII, Equal Pay Act and Retaliation claim, and  file a joint status report  monthly, within a week after each meeting, the first to be submitted on July 18, 2024 (Doc. 116,p. 1).  Dr. Metzinger submitted the records, with explanation in Doc. 117 filed on July 8, 2024.

78.

On August 18, 2024, Washington defense counsel for the Government reported in writing that the Agency personnel in New Orleans, as well as the Agency lawyer (Ms. Powell) and the Asst. U.S. Attorney in the Eastern District (defending the Title VII claim and who had withdrawn the Government from the *in globo* settlement that had been confected by mediator U.S. Eastern District Court Judge Lance Africk, back in 2022), had "conferred with him on **July 31, 2024"** and then had sent him documents **on August 16, 2024** to assist with defense of the claim. He stated:

> As stated in the prior joint status report, defendants have been gathering the information necessary to assess the viability of settlement. On **August 16**, *a human resources specialist with the Department of Veterans Affairs (VA) transmitted to counsel for the Government fifteen Standard Form 50 (SF-5) Notifications of Personnel Action*. These <u>SF-50s</u> provide salary information during the relevant timeframe for Dr. Metzinger and the comparators that her amended complaint identifies. Defendant is currently reviewing that information.

> Defendant has also spoken with **agency counsel and with the assigned Assistant United States Attorney in the Eastern District of Louisiana (EDLA).** Counsel for defendant emailed the EDLA AUSA on July 31, 2024, and they **spoke by telephone the following week.**

> ....

> Finally, counsel for the defendant spoke with the EDLA AUSA by telephone **on <u>August 16</u>** about the possibility of a global settlement that addresses the Equal Pay Act claim in this Court, the Title VII claim in EDLA, and the retaliation claim that will be transferred to the EDLA. This discussion remains ongoing.

On August 20, 2024 in Doc.120, p. 3, defending Government counsel reported having scheduled and then conducted conversations with the New Orleans VA Agency Human Resources on **August 16, 2024.** The following day, Government counsel reported -- on **August 21, 2024** -- having "conversed with the Agency Personnel" and that the Agency Human Resources people "transmitted" on **August**

**16, 2024** documents including SF 50's establishing that Dr. Metzinger's claim fails as she was the "highest paid as of June 26, 2016" *with the false implication being no violation occurred.*

79.

On **August 21, 2024,** Plaintiff counsel then received a letter from the Government counsel. He stated "we currently have no reason to assign any litigation risk to this claim" as follows:

> As it stands now, the documents I have reviewed from the VA and EDLA provide no basis for me to assign any litigation risk to the United States regarding Dr. Metzinger's Equal Pay Act (EPA) claim. Instead, the documents I have reviewed indicate that, **at all times _after June 26, 2016,_** Dr. Metzinger was the highest paid employee in her section… this salary increase was the result of the September 2017 market pay panel…. This salary increase was retroactively applied to all pay periods beginning June 26, 2016. … Finally , the SF-50- from other employees confirm that , during all times after June 26, 2016, Dr. Metzinger was earning more than the comparators identified in the amended complaint.
> 80.

The Government letter claims outright (and wrongly) that "after **June 16, 2016, Dr. Metzinger was the highest paid in her section."**

81.

The Government's letter dovetails with the Government's contention to this Court that FLSA, 29 U.S.C §255(a) only reaches claims for paychecks issued three years prior to May 19, 2019 – the date of the filing of the civil action in district court-- and not the date of filing of the EEOC claim – June 17, 2017. (If three years from the date of commencing the EEOC complaint were the time period of limitation she would be entitled to back pay and liquidated damages to June of 2014.) The June 16, 2016 date also conveniently fits within the Government's defense strategy to avoid

payment of liquidated damages which are calculated as "double the violation." The Government has contended that it has "paid her back wages" (without providing evidence of the amount or when) and therefore "no violation occurred" *even though it only did so long AFTER she commenced a Title VII and Equal Pay Act action therefore the VA could no longer avoid the complaint, and paid back wages in lieu of paying a settlement.*

82.

After Dr. Metzinger filed the evidence from the ROI and discovery in the EEOC proceeding, defeating their arguments, on July 8, 2024, and the Government "conferred" the VA fabricated evidence to confiscate the issue and defeat the proof. On **August 22, 2024,** Dr. Metzinger received a routine notification through email that *documents had been added* to her electronic Veterans Administration Official Personnel Folder (eOPF). Such a routine notification could easily be overlooked by a busy surgeon and administrator. The documents are in the record as Doc.126-5,pp.1-17 <u>Exhibit C, p.1</u> (email notification)).

83.

The documents that were **<u>added</u>** that day that were not routine at all. The VA had placed "completed" Market Pay Review Panel forms purporting to evidence market pay panels for <u>October 2012</u>, <u>November 2014</u> and <u>June 16, 2016</u> in her file. Doc.126-5 pp.3,8,13. Although they are purportedly for the years 2012, 2014, 2016, fortunately the computer electronically generates the date the completed forms were actually created -- **August 15, 2024**. They were signed by Randolph Roig the new Chief of Staff, electronically on August 15, 2024, and by the New Orleans VA Director on August 19, 2024.

84.

*Market Pay Defined*: 38 U. S. Code Sec. 7431 (c) sets out that "One element of pay for physicians and dentists SHALL be market pay" and the criteria to be considered when establishing annual amount of the market pay  includes e.g. whether the physician is board certified, level of  experience, etc.  Another element shall be  "performance pay." 38 U.S.C.7431 (d). The Code also sets out that NOT LESS THAN ONCE EVERY TWO YEARS the Secretary  shall prescribe the minimums and maximums of pay for a specialty. Except as provided in 38 U.S.C.7431 e (3) and (4), the sum of the total of the annual rate of base pay payable to a physician under (b) and the market pay determined under subsection (c) may not be less than the minimum nor more than the maximum. 38 U.S.Code Sec. 7431 e(2). Para.(3)and (4) deal with adjustments to base pay based on the years of service and increases authorized under Sec. 5303 sets out the annual adjustments to pay scheduled. (As of January 10, 2016, the maximum for a Tier 2 physician Section Chief in Dr. Metzinger's specialty of Ophthalmology was 310,000 dollars. Title 38, U.S.C. 7431 effective January 10, 2016.  The maximum for a staff physician –e.g. Diamond, Jaramillo, Carriere etc., was 300,000 dollars.)

85.

The  Market Pay Review and Approval Form that purports to be a  June 16, 2016 report of a convened panel  (Doc126-5,p.3) falsely shows a "date of last market pay review of 11/02/2014" and  a "Recommended Annual Pay of 300,000" dollars on the **16th of June, 2016**."   That market pay panel never happened.  The completed and signed June 16, 2016, report is a fabricated report of a pay panel review that

never occurred.  Indeed, the  June 16, 2016, report  is "Digitally Signed" by Randolph

Roig, M.D. and Kelley Washington  on **August 15, <u>2024.</u>** It is also signed by the New

Orleans V.A. Director Fernando Rivera on August 19, 2024,   who cautiously included

the following typed statements before adding his signature:

> *Metzinger, Rebecca; June 2016 Review: Retro <u>Effective</u> <u>June 16, 2016</u>*

> *Retro Document Created to Update Employee's Official Record*

> *Action by Approving Official is for Reconstruction Purposes Only*

> *This is a reconstruction Comp panel form/Market Pay Review Form. Information listed has been populated using SF-50 information, as available, from employee eOPF personnel records. 38 U.S.C. 7421c(5) requires  that market pays be reviewed every 24 months. This action is being processed to meet the legal requirements set forth in statute.*

Doc.126-5, p.6("2016" form created in 2024).

86.

It is to be noted that Doc.126-5p.3  purports  to approve a market pay increase

approval to 300,000 dollars, on **June 16, 2016, b**ut was "digitally signed" on August

15,2024  by a supervisor, and  **signed by the Agency Director on August 19, 2024**.

It was put in the personnel record on **August 20, 2024.**

87.

The fabricated documents were created by the  New Orleans V.A. officials after

Washington, New Orleans VA and the Government's Eastern District legal counsel

conferred on July 31, 2024 (according to Washington Counsel's  letter  to Dr.

Metzinger's counsel of August 18, 2024, quoted *infra*).

The timing, content and nature of the Agency's actions raise the spectacle of an agency that is fabricating documents, inserting them into the official record for the first time, for the sole purpose of supporting their legal defense strategy.

88.

Based on the proximity in time of the conversations conducted between the Agency and Government counsel in this case, in which he was "gathering information" from the Agency to assist in the defense, to the creation and filing of the fabricated documents in Dr. Metzinger's personnel record, Dr. Metzinger has concluded that in the wake of her outline of the Agency's actions and authenticated evidence provided to the Court in the July 8, 2024 filing, Doc. 117 and its attachments, the Agency officials created and filed new documents to refute the inevitable conclusion that violations had occurred, and to prevent liquidated and other damages to which she is entitled. The Agency officials misguidedly believe that with these documents no "violation" had occurred because Dr. Metzinger was "fully paid," and "received market pay panel and reviews" so as to bar her from recovery of liquidated damages to which she is entitled under the Act. Washington counsel reported receiving SF 50's from New Orleans officials that support his defense. Those have not been shared with Dr. Metzinger's counsel. However, undoubtedly, they are back dated by the VA officials as well.

89.

Also entered as part of Exhibit C in the ePOF is a Market Pay Review for 2014 purporting to "approve" a market pay of $255, 046 and an increase of "0"; as well as a 2012 Market Pay Review reporting an increase of "0." Once again, both are signed

by the Director on **August 19, 2024,** without the additional Mr. Rivera statement referenced above --- and as if it was an authentic document which it is not.

90.

Previous subpoenas and discovery requests  issued to and responded by the Agency during the EEOC proceedings had never disclosed or resulted in production of these forms.  Depositions of the Agency person in charge, Ms. Debbie Richard, under oath confirmed that she had searched all records, and **no such market pay panels documents were uncovered** in those years. This was despite an exhaustive audit of all records. See  New Orleans,  V.A. Officer Debbie Richard deposition excerpts, dated April 4, 2019, excerpts (Rec. Doc. 117-2 pp. 49-99, and p. 97).   Prior to August 22, 2024, no such document was a part of Dr. Metzinger's ePOF.  Nor has such a document ever been produced in the EEOC or any other proceeding, in any form whatsoever.

91.

The above wrongful acts demonstrating a lack of good faith were taken  <u>after</u> the Court's July 8, 2024 (Doc.116) order directing settlement negotiations on ALL of Dr. Metzinger's claims and monthly updates and records regarding allegations of government misrepresentations (Doc. 116,p2.) and AFTER  Dr. Metzinger provided the documents with explanation in the record on July 18, 2024 as Doc.117 pp.2-27 and attachments, but **BEFORE** this Court's decision issued on **October 25, 2024**, respecting the Government's R. 12 motion.

92.

The liquidated damages is owed as of the date of the violation – which is the day that a pay check is not what it should have been. The  Government's machinations in August 2024do not deprive Dr. Metzinger of her right to claim liquidated damages for the violations that occurred in 2008-2018 (subject to the statute of limitations) and for the pay checks received  prior to the date a market pay panel was convened on her behalf and ordered a pay increase in conformity with the Equal Pay Act– August 28, 2017--  as well as  for those pay checks  in which the lawful pay was delayed and issued without the proper lawful wage amount.  They do show bad faith.

93.

**Item 2:  Dr. Metzinger Relied on the Government's Direction and Inducement When Initiating and Prosecuting Her Equal Pay Act Claim in the EEOC, A Fact the Government Took Advantage of  To Reduce And Even Bar Her Recovery.**

94.

Agency documents in the record (Doc. 117-1 Agency documents),  and documents attached in the record as Doc.126-3"A"(Office of Resolution Management Department of Veterans Affairs ("ORM") Notice of Right To file Discrimination Complaint to Rebecca Metzinger in EEOC No.  2002-0629-2017103788 (Record of Investigation Doc., ROI 000032) signed and executed by Dr. Metzinger on July 12, 2017 (000038)) and  Doc. 124, p. 18 and Doc.126-3,ROI pp.000032-0,  00039 and 000045 are included as if expressly attached.

95.

As set forth in detail in Para 15-17, of the First Amending Complaint,  which is incorporated herein as if expressly set forth, the FLSA/Equal Pay Act action (

EEOC. No. 461-2018-00121X, Agency No. 2003-0629-2017103788 )was timely "commenced" on June 20, 2017, in the EEOC after consultation with HR on May 22, 2017, complaint  of sex discrimination with respect to wages was "accepted" for prosecution in the EEOC. Prosecution of the claim in the EEOC after completion of the administrative mediation process  accorded with the regulatory language of the EEOC and the express direction and instruction of the EEOC and Agency H.R. officials with whom Dr. Metzinger consulted.  As recited in para.18 of the First Amending, on May 21, 2019, Plaintiff filed an EPA action in the federal district court for the Eastern District of Louisiana (EDLA), based on concurrent jurisdiction to protect her wage claims.  However, days before the EEOC trial, the Government successfully moved to dismiss the entire EEOC proceeding (EPA as well as the Title VII and Retaliations claims) _depriving Dr. Metzinger of the benefit of her EEOC_ _commencement date for the recovery of damages, despite concurrent jurisdiction_.  Doc. 117-1. Dr. Metzinger's timely appeal of the Agency's and the VA Hearing Officer's wrongful exclusion of the EPA wage claims, and the dismissal of the entire matter, to the Veterans Administration Office of Employment Discrimination Complaint Adjudication (OEDCA)  as opposed to the district court _was also at the written_ _direction of the Government._ Doc. 117-1. However, the OEDCA within 24 hours affirmed the dismissal. granted the motion with a  Final Decision dismissing the EEOC action, despite there being no law to support it, on November 21, 2019. Doc.117-1.

96.

OEDCA informed Dr. Metzinger in the Final Order notice that she had right to file a civil action in district court within 90 days "if no appeal to EEOC has been filed." Doc.117-1 OEDCA Order 11/21/2019. However her EPA claim was  already filed, served, and pending before the district court thus as a practical matter,  Dr. Metzinger could not practically appeal to EEOC as the EEOC would have followed,

based on the history in this case and precedent, *albeit* wrongly, the decision by OEDCA with respect to jurisdiction  and would have taken years to do so. Commencing and prosecuting the claim  in the EEOC also met with the requirements issued in public government notices. The latter includes but is not limited to EEOC Publication regarding filing Equal Pay Act complaint, Doc.115-1, pp 1-5.  At no time did any Agency or its  officials inform her, or the Public, that recovery of backpay or other damages would be limited in time by commencing and pursuing the action in the EEOC as opposed to immediately filing a civil lawsuit. To the contrary, while pursuing her action in the EEOC the Government induced Plaintiff to participate in extensive and expensive written discovery, numerous depositions to file motions to compel and or Agency -issued sets of several written formal discovery requests to Dr. Metzinger (November 9, 2018)  respond to, Agency -filed  non dispositive and dispositive motions in the EEOC respecting the EPA wage claim.

97.

Nor was Dr. Metzinger or the public ever informed by Agency official or through Agency bulletin, or regulation that  to secure the benefit of the damages to which she was legally entitled under the Equal Pay Act, her action had to be filed in the United States Court of Federal Claims.  Had she been allowed to pursue in the EEOC her remedy, as she was entitled,  §255(a)  would not limit her recovery of damages, by two more years.  The recovery, if it limits it at all, would be three years prior to the action commenced in EEOC – June 17, 2017, not the date the action was filed in district court –May 19, 2019.

98.

The  Hearing  officer Erania Ebron as verified by the "Order,  and the Amended Order on Initial Conference and Scheduling Order" ("Scheduling Notice") she issued on **March 21, 2019** (EEOC. No.  461-2018-00121X, Agency No.  2003-0629-2017103788)  included  only  Dr.  Metzinger's      Title  VII  hostile  work

environment/harassment /temporary disability and reprisal claims as the issues before her for trial, and DID NOT INCLUDE THE WAGE CLAIMS, despite the fact the EPA wage claim had been filed, formally "accepted" and referred for adjudication to her by the EEOC investigator, and Plaintiff's verbalized objection to the omission Scheduling Order. Expressly stating that it was "In response to the Scheduling Notice and Order issued in the matter," the Agency filed a Pre-Hearing Report that did not include the wage claims. The Agency followed this on May 23, 2019, with a Motion for Summary Judgment and dismissal of the case that identified only hostile work environment /harassment claims disability and reprisal claims as before the court.

99.

As acknowledged by the Court of Federal Claims the EEOC VA hearing officer was "likely mistaken" stating "It appears that Dr. Metzinger's administrative claim should not have been dismissed and that she should have been able to recover administratively for earlier violations, under the statute of limitations governing that earlier-filed proceeding." Doc. 124, p.17.

100.

Dr. Metzinger therefore filed a separate lawsuit action in the civil district court and claimed "improper process" by the Agency, seeking relief. Dr. Metzinger cited the Government's inducements to commence and prosecute discrimination action including EPA claims *in the EEOC,* and the wrongful dismissal of her claims by the EEOC hearing officer despite concurrent jurisdiction. Once again the Government successfully moved to dismiss the cause of action on R.12 failure to state a claim, the Judge for the Eastern District of Louisiana concluded the cause of action for improper process was valid but *reinstating the EEOC or OEDCA* would be pointless because the Title VII claims were already before the Court de novo. The Equal Pay Act claims

were already before her court as well. *Metzinger*, EDLA. Doc.76 p,11. No. 20-10614, Doc. 76, p.7 of 17; p. 10. That interlocutory decision was not appealable.

101.

In retrospect the Government's actions ensured that Dr. Metzinger would not receive a hearing before the EEOC appointed VA hearing officer of her wage claims, forcing a district court suit to protect the claims, *resulting in the forfeiture of her June 17, 2017 EEOC commencement date as the basis for recovery of her back wages and damages claim*.

**Item 3. The Government Pursued a Cynical Strategy of Presenting Inconsistent Jurisdiction Arguments to Upset Settlement and Eliminate Jurisdiction of the Claim in Any Forum.**

102.

The Government agreed to a formal mediation with E.D. LA. Judge Lance Africk and settlement in the EDLA of ALL claims, including the EPA and Title VII and Retaliation claims until the Government abruptly withdrew from the settlement, citing "absence of jurisdiction of the EPA wage claim" and moved once again successfully under Federal Rule of Civil Procedure 12(b)(1) relying on *Abbey v. United States*, 745 F.3d 1363 (Fed. Cir. 2014), to dismiss or transfer the EPA to this Court. The Government successfully argued that, per the Tucker Act, 28 U.S.C. § 1491(a)(1), the Court of Federal Claims has exclusive jurisdiction of EPA money-damages claims against the government if over $10,000. arguing the May 2019 commencement in the Eastern District of Louisiana was without jurisdiction. *Metzinger v U.S. Dep't of Veterans Affs.*, No. 19-10614, 2020 WL 13562907, at 2-3 (E.D. LA. May 4, 2c020).

103.

Metzinger appealed against the dismissal to the Fifth Circuit Court of Appeals. Once again the Government successfully moved for the appeal to be dismissed, based on "lack of jurisdiction" in the Fifth Circuit of the Equal Pay Act claims.

104.

The Government *abruptly reversed course* as soon as Dr. Metzinger's appeal of the dismissal and transfer under Section 1631 (see id. At *4) was lodged in the Federal Circuit. The Government submitted a brief in the Federal Circuit arguing that the Court of Federal Claims lacks jurisdiction over FLSA or EPA claims against the government. (*id.* at 7, 10-13) and the EPA claim in the Court of Federal Claims should be dismissed despite the fact that it was the Government that had successfully moved put it there. Government Resp. Br. for Def.-Appellees at 4-5, *Metzinger v. Dep't of Veterans Affs.,* No. 20-1906 (Fed. Cir. Dec. 7, 2020).

105.

At the same time the Government was arguing that the EDLA actually had jurisdiction and dismissal was improper, *the Government was simultaneously arguing in an identical case pending in the Fourth Circuit that the district court does <u>not</u> have jurisdiction of FLSA/EPA claims and only the Court of Federal Claims does*. See, *Stein v. Gill* No. 2023-1265 (Fed. Cir. Jun. 9, 2023 ( comparing the Government's shifting positions in Dr. Metzinger's case and to the case before it). Only after the Federal Circuit Court judges personally alerted the Government to the unacceptability of its shifting positions, during the oral argument, in *this* case, did the Government change its position in Ms. Stein's appeal to align with the one taken in Dr. Metzinger's appeal.

106.

After the Federal Circuit maintained this action, the Government successfully moved to dismiss the claim in part in this Court once again *based on a limitations defense arguing* the recovery of any wages prior to the date of filing in the EDLA May

19, 2019 were barred under the statute of limitations – rejecting Metzinger's argument the EEOC commencement date is the relevant filing date.

107.

The Government has in writing  in "settlement updates" signaled its intention now to move to dismiss the Title VII based wage and retaliation claim that was stayed in the EDLA,  on a statute of limitations theory /laches/duplication of remedy theory, even though the claims were stayed there pending resolution of  appeal in this Circuit because the Equal Pay Act action was filed first, and matters before this circuit impact the claims in the district court and pursuing both cases at the same time could lead to inconsistent judgments.

108.

The Government's actions demonstrate a bad faith strategy, based on legal posturing far beyond what any employee could ever tackle on their own or afford to pay a lawyer to contend with– with the sole intent of defeating the righteous wage claims of its employees. The Plaintiff's claim of governmental estoppel based on similar facts has been previously heard by the Court, denied  and preserved for appeal.   The facts recited bear also however on the question of whether the Government can defend against liquidated damages on the basis that it has acted in good faith, so as to defeat Dr. Metzinger's  claim for liquidated damages. It has not.

109.

New Orleans officials actions during Spring through summer of 2017 demonstrate bad faith and willfulness by virtue of 1) harassing comments she received after Dr. Metzinger's general remark that she was put on a compensation board and for the first time to her surprise realized that she was making less than the staff she supervised. Dr. Smith  advised her to resign from her position as Chief of Ophthalmology.  Male comparator Dr. Diamond ,characterized as a "traditionalist" in his 70's verbally likened her to "his daughter" who should "focus on her family"

and he could step into the position. D  Dr. Smith, "acting as a friend" told her she should step down because "the Chief of Staff and Director of the facility are "out for blood …[my] blood …that "I had been a very poor leader". Dr. Smith also told her it was "easier to fire doctors under the new laws." He sent her an email on April 28, 2017, instruction her to have a "written resignation on his desk upon her return from leave (she was out of town on a personal matter after which she concluded she should not resign.).

110.

Before them Dr. Smith's  first performance appraisal of Dr. Metzinger in 2016 for the 2015 year was "exceptional" in all categories,  as had been every other performance review she received during each of the years she worked for the VA. However instead of acknowledging the legitimacy of her query regarding pay disparity, on May 22, 2017, Dr. Smith's assistant called her in and  handed her the fiscal year performance review for the year 2015-October 1, 2016 (the 2016 evaluation)  that is referenced in item e) of page 27 of Doc. 98 (First Amd. Pet.) -- *eight months late.* In it "leadership" was marked   "unacceptable" without having provided any type of verbal or written counseling or disciplinary action prior to the review. Other classifications were marked merely  "fully successful."

111.

On May 24, 2017, Dr. Metzinger incurred a concussion/head injury as diagnosed by a neurologist while operating due to a suspended light hanging in the temporary surgical trailer that had been set up for use while the new hospital was being built. She suffered post concussive symptoms including headache and dizziness. She was out of work through July 7, 2017. Thereafter Ira Page (the New Noack VA Workers Compensation Employee) informed her that the Surgery Administrative office (Nathan Dion) was "in Willi Martin's office" trying to file a complaint against her. Dr Smith informed her that upon returning she needed "special

accommodations" to cope with memory loss despite receiving all clear from the neurologist.

### 112.

Dr. Metzinger was subsequently barred from sitting as a member of the Compensation pay panel, in violation of federal regulations.

### 113.

In October 2018 an Office of Inspector General complaint was filed against her by an "anonymous" person which she later discerned was colleague Dr. Diamond, who on information and belief, was friends with and had spent some time living at the home of Dr. Smith,  and who also was the physician that Dr. Smith tried to replace her with. The investigation was pursued in violation of V.A. procedures and due process. She advised HR of the investigation and questioned again whether it was entitled to higher pay. The HR representative advised her to file an amended EEOC complaint. The second "anonymous" complaint discussed in ¶50 of Doc. 98 and filed against her with OIG when the Complaint in this court was filed, was also investigated and dismissed as having no substance.

### 114.

On June 28, 2017 Chief of Staff Dr. Schapira and Chief of Surgery Dr. Smith met with Tulane Univ. Medical Centers  officials and disparaged Dr. Metzinger to her colleagues at Tulane, including the Program Director and Chairman Dr. Weiss, Dean of Graduate Medical Education at Tulane and another doctor, Dr. Caldwell (chairman of the Ophthalmology at Tulane and Dr. Ayala, program Director of Ophthalmology program.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rbecca Metzinger prays that this Second Supplementing Complaint be filed, and served on Defendant, the United States, and that after due proceedings, there be judgment herein in her favor and against Defendant as set forth in this and in the First Amending Complaint, and for attorneys' fees, liquidated damages, penalties, court costs, post judgment interest, back pay, an amount to cover additional taxes and pension additions and all other relief and remedies allowed by law. under the FLSA and Equal Pay Act and all regulations relative thereto.

RESPECTFULLY SUBMITTED,

BY: /s/ Marie Riccio
LAW OFFICES OF MARIE RICCIO
LA Bar (#11214)
445 Broadway Street
New Orleans, Louisiana 70118
EMAIL: marie@officericcio.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

 I hereby certify that on January 15, 2025  I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all parties through their counsel of record and all others will be served as required by law. A R.7 certificate is also attached respecting notice to the Government on January 15, 2025  of the intent to file this motion.    /s/ Marie Riccio