No. 23-332C
(Judge Silfen)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

REBECCA METZINGER, M.D.,
Plaintiff,

v.

THE UNITED STATES,
Defendant.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

|  |  |
|---|---|
|  | YAAKOV M. ROTH
Acting Assistant Attorney General |
|  | PATRICIA M. McCARTHY
Director |
| Of Counsel: |  |
|  | REGINALD T. BLADES, Jr.
Assistant Director |
| RAQUELLE BADEAUX-PHILLIPS
Trial Attorney
Office of General Counsel
Veterans Affairs |  |
|  | PATRICK S. ANGULO
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 507-6083
Patrick.S.Angulo@usdoj.gov |
| April 7, 2025 | Attorneys for Defendant |

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT .................................................. 1

STATEMENT OF THE ISSUES.......................................................................................... 1

STATEMENT OF THE CASE ............................................................................................ 2

    I.      Nature Of The Case........................................................................................... 2

    II.     Statement Of Facts ........................................................................................... 2

          A.     Background Involving The VHA Pay System .......................................... 2

          B.     Chronology Of Dr. Metzinger's Employment And Compensation ........... 4

          C.     Salary Information Of Comparators ........................................................ 5

               1.     Dr. Diamond ................................................................................. 6

               2.     Dr. Vincent .................................................................................. 6

               3.     Dr. Carriere .................................................................................. 6

               4.     Dr. Jaramillo ................................................................................ 6

          D.     Dr. Metzinger's Claims And Subsequent Complaints .............................. 7

    III.    Procedural History ........................................................................................... 7

ARGUMENT.....................................................................................................................10

    I.      Standards Of Review ........................................................................................10

    II.     The Government Is Entitled To Summary Judgment .........................................11

          A.     The Equal Pay Act...............................................................................11

          B.     Dr. Metzinger Cannot Prove A Prima Facie Case For Back Pay Under The EPA Because She Was Paid More That The Male Comparators.......12

CONCLUSION...................................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................................................................10

*Behm v. United States*,
  68 Fed. Cl. 395 (2005) ...............................................................................................12

*Bertotti v. Philbeck, Inc.*,
  827 F. Supp. 1005 (S.D. Ga. 1993) ............................................................................16

*Boyer v. United States*,
  97 F.4th 834 (Fed. Cir. 2024)......................................................................................12

*Brinkley-Obu v. Hughes Training, Inc.*,
  36 F.3d 336 (4th Cir. 1994)....................................................................................16, 17

*Brooks v. United States*,
  101 Fed. Cl. 340 (2011) ..............................................................................................15

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...............................................................................................10, 11

*Corning Glass Works v. Brennan*,
  417 U.S. 188 (1974) ...............................................................................................12, 15

*Embrey v. United States*,
  17 Cl. Ct. 617 (1989)...................................................................................................10

*Fredriksen v. Consol Energy Inc.*,
  No. 2:18-CV-00379-MJH, 2019 WL 2108099 (W.D. Pa. May 14, 2019).................15

*Gordon v. United States*,
  903 F.3d 1248 (Fed. Cir. 2018).....................................................................................5

*Hein v. Oregon College of Education*,
  718 F.2d 910 (9th Cir. 1983)........................................................................................16

*Ingram v. Brink's, Inc.*,
  414 F.3d 222 (1st Cir. 2005) ........................................................................................15

*Jordan v. United States*,
   122 Fed. Cl. 230 (2015) ....................................................................................................15

*Marcellin v. Kupferer*,
   No. 02-95-A, 2002 WL 32356683 (E.D. Va. July 19, 2002), *aff'd*, 60 F. App'x 513 (4th Cir.
   2003) ..............................................................................................................................15

*Mauze v. CBS Corp.*,
   340 F. Supp. 3d 186 (E.D.N.Y. 2018) .............................................................................16

*McEwen v. MGM Grand Detroit*,
   No. 03-73039, 2006 WL 83476 (E.D. Mich. Jan. 12, 2006) ............................................16

*Metzinger v. Dep't of Veterans Affs.*,
   20 F.4th 778 (Fed. Cir. 2021) ........................................................................................8, 9

*Metzinger v. Dep't of Veterans Affs.*,
   No. 2:19-CV-10614 (E.D. La. May 21, 2019) ....................................................................7

*Metzinger v. Dep't of Veterans Affs.*,
   No. 2:20-CV-599 (E.D. La. June 18, 2020) ....................................................................8, 9

*Metzinger v. Dep't of Veterans Affs.*,
   No. 20-30317 (5th Cir. Aug. 12, 2020) ..............................................................................8

*Moore v. United States*,
   66 F.4th 991 (Fed. Cir. 2023) ..........................................................................................12

*Odomes v. Nucare, Inc.*,
   653 F.2d 246 (6th Cir. 1981) ...........................................................................................16

*Ryduchowski v. Port Auth. of N.Y. & N.J.*,
   203 F.3d 135 (2d Cir. 2000) ............................................................................................12

*Spears v. Louisiana*,
   767 F. Supp. 2d 629 (M.D. La. 2011) ..............................................................................16

*Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.*,
   833 F.2d 1560 (Fed. Cir. 1987) ..................................................................................10, 11

*True v. New York State Dep't of Corr. Servs.*,
   613 F. Supp. 27 (W.D.N.Y. 1984) ...................................................................................16

**STATUTES**

29 U.S.C. §§ 201, 303(e)(2) .................................................................................................11

29 U.S.C. § 206 ............................................................................................................... 7

29 U.S.C. § 206(d)(1) ..................................................................................................... 1

38 U.S.C. § 206(d)(1) ............................................................................................. 15, 18

38 U.S.C. § 7431 ............................................................................................................ 2

38 U.S.C. § 7431(a) ....................................................................................................... 3

38 U.S.C. § 7431(b) ....................................................................................................... 3

38 U.S.C. § 7431(c) ....................................................................................................... 3

38 U.S.C. § 7431(c)(5) ................................................................................................... 3

38 U.S.C. § 7431(d) ....................................................................................................... 3

38 U.S.C.A. § 7431(c)(2) ............................................................................................... 3

Pub. L. No. 108-445, 118 Stat. 2636 (2004) ................................................................ 2

## RULES

RCFC 56 ......................................................................................................................... 1

RCFC 56(b) .............................................................................................................. 1, 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

REBECCA METZINGER, M.D.,                )
                                        )
              Plaintiff,                )
                                        )
       v.                               )        No. 23-332
                                        )        (Judge Silfen)
THE UNITED STATES,                      )
                                        )
              Defendant.                )

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC), and this Court's March 6, 2025 order, defendant, the United States, respectfully requests that this Court grant summary judgment in favor of the United States. No material facts are in dispute and plaintiff, Dr. Rebecca Metzinger (Dr. Metzinger), cannot prove the essential elements of her claim. Accordingly, the United States is entitled to judgment as a matter of law.[1]

## <u>STATEMENT OF THE ISSUES</u>

The issue in this case is whether Dr. Metzinger can establish a prima facie case under the Equal Pay Act, 29 U.S.C. § 206(d)(1) when she was the highest paid employee in the section beginning June 2016.

---

[1] In the interests of judicial economy, defendant requests summary judgment before this Court has entered a discovery schedule because the documents already exchanged between the parties demonstrate that Dr. Metzinger cannot prove an essential element of her claim. *See* RCFC 56(b). If the Court were to deny the present motion, defendant respectfully reserves the right to file a renewed motion for summary judgment following additional discovery.

## STATEMENT OF THE CASE

I.    <u>Nature of the Case</u>

This case concerns physicians at Southeast Louisiana Veterans Health Care System (SLVCHS), a medical facility operated by the Veterans Health Administration (VHA) of the Department of Veterans Affairs (VA or agency).  Dr. Metzinger joined SLVCHS in 2008 as an ophthalmologist.  She alleges that, from the beginning of her employment with SLVCHS, she has experienced sex-based wage discrimination and has not received the appropriate market-based pay increases.

II.    <u>Statement of Facts</u>

A.    <u>Background Involving the VHA Pay System</u>

In 2004, Congress enacted The Department of Veterans Affairs Health Care Personnel Enhancement Act of 2004, Pub. L. No. 108-445, 118 Stat. 2636 (2004) (codified as 38 U.S.C. § 7431) (VA Pay Bill).  The VA Pay Bill changed the manner in which the VHA was required to compute physician salaries.  Congress directed the VHA to assign each physician to a tier reflecting different professional responsibilities, professional achievements, and administrative duties.  *Id.* § 7431(e)(1)(B).  During the relevant timeframe, there were seven pay tables ranging from the lowest pay range (Table 1) to the highest pay range (Table 7), with Pay Table 3 being applicable to Dr. Metzinger, a physician practicing in the ophthalmology specialty.  *See* Appx1–7.[2]  Like all but one of the other pay tables, Pay Table 3 contains three tiers for physician pay, based on job duties and supervisory responsibilities.  *See* Appx3.  The Tier I pay range applies to regular staff physicians, the Tier II pay range applies to supervisors, and the Tier III pay range applies to section chiefs.  *See id.*; *see also* Appx58 (Richard Tr. 97:18-23).  Because the three tiers indicate increasing levels of

---

[2]  "Appx__" refers to pages of Defendant's Appendix, which is attached to this motion.

responsibility, the corresponding pay ranges allow for increasingly greater salary bands. For example, in 2016, the pay range for a Tier II ophthalmologists was $120,000 to $310,000; the pay range for a Tier III ophthalmologist was $135,000 to $320,000. *See* Appx3.

Under the VA Pay Bill, a physician's salary within these pay ranges is determined by three elements: base pay, market pay, and performance pay. *See* 38 U.S.C. § 7431(a). Base pay, also known as base and longevity pay, is determined by the physician's years of experience and is set by schedule. *See* 38 U.S.C. § 7431(b); *see also* Appx46 (Richard Tr. 29:13-16); *see also, e.g.*, Appx8.

The second element is market pay. *See* 38 U.S.C. § 7431(c); *see also* Appx 46 (Richard Tr. 29:17-21). Market pay is intended to reflect "the recruitment and retention needs for the specialty or assignment" of a VA physician. 38 U.S.C.A. § 7431(c)(2). Until 2019, the amount of market pay for a particular physician was to be determined by an approving official upon the recommendation of a compensation panel. 38 U.S.C. § 7431(c) (2016); *see also* Appx45 (Richard Tr. 26:9-26); Appx54 (Richard Tr. 89:7-17); Appx57 (Richard Tr. 96:9-24). A compensation panel must review the market pay for each physician at least once every two years, at any time deemed necessary by a managing official, or if a physician's duties change (such as taking on a supervisory role) and a resulting tier adjustment is necessary. 38 U.S.C. § 7431(c)(5). The determination of the amount of market pay takes into account several factors, including the physician's level of experience, the need for the specialty, and the labor market for that specialty. 38 U.S.C. § 7431(c).

The third element is performance pay. *See* 38 U.S.C. § 7431(d). Performance pay is paid to a physician based on his or her achievement of specific goals and performance objectives identified by VA. *Id.* § 7431(d)(2).

### B.     Chronology of Dr. Metzinger's Employment and Compensation

Dr. Metzinger began working at SLVHCS as an ophthalmologist on July 6, 2008.  Appx49 (Richard Tr. 50:2); *see also* Am. Compl. ¶ 7.  Dr. Metzinger was hired as a Tier II physician at the GS 15-1 grade, with an annual salary of approximately $240,000.  Appx49 (Richard Tr. 50:2-3); Appx72 (Schapira Tr. 66:12-15); *see also* Am. Compl. ¶ 7.

On June 26, 2016, Dr. Metzinger received a within-grade increase to GS-15 step 5.  *See* Appx13.  As a result, Dr. Metzinger's salary increased from $257,234.00 to $260,599.00.  *See id.*  The following year, base and longevity pay for VHA physicians was frozen.  *See* Appx47 (Richard Tr. 38:23-39:7); Appx60 (Richard Tr. 164:7-10).  Accordingly, Dr. Metzinger's 2017 annual salary was $261,745.  *See* Appx20; *see also* Appx55 (Richard Tr. 85:13-18).

In August 2017, the VA convened a compensation panel for Dr. Metzinger.  *See* Appx26–27.  Five members sat on the panel, including Dr. Ralph Schapira, SLVHCS chief of staff.  *See id.*; *see also* Appx75 (Schapira Tr. 91:6-7).  Other attendees included the chief of emergency medicine, chief of pathology, chief of medicine services, and an HR technical advisor.  Appx76 (Schapira Tr. 92:11-24).  The panel ultimately recommended a salary of $300,000, based on Dr. Metzinger's experience, responsibilities, and regional median salaries for comparable positions.  *See* Appx27.  Dr. Fernando Rivera, SLVHCS director, approved the recommendation on August 28, 2017.  *Id.*

As a result of the August 2017 compensation panel, Dr. Metzinger became the highest paid employee in the ophthalmology section.  Appx78 (Schapira Tr. 100:3-12); *see also* Am. Compl. ¶ 31.  The salary increase (to an annual salary of $300,000) was also applied retroactively to the date that Dr. Metzinger was eligible for a biannual market pay review, which was June 26, 2016.[3]

---

[3]  It is unclear why a market pay panel was not convened for Dr. Metzinger in 2016.  During the deposition of Debbie Richard, assistant deputy of HR, Ms. Richard suggested that no market pay panel was convened in 2016 because base and longevity pay for VHA physicians was to be

*See* Appx50 (Richard Tr. 60:3-12). Following the August 2017 compensation panel, the VA issued a corrected Standard Form (SF) 50 for 2016 and 2017, indicating that the salary increase was to be applied retroactively beginning June 26, 2016. *See* Appx14; Appx21.

Defense Finance Accounting Service (DFAS) began processing the back pay resulting from Dr. Metzinger's August 2017 compensation panel in October 2017. *See* Appx97–98 (Wilson Decl. ¶¶ 2–3). DFAS paid Dr. Metzinger back pay on October 6, 2017; October 20, 2017; January 12, 2018; April 5, 2019; May 17, 2019; and November 1, 2019. *See* Appx98 (Wilson Decl. ¶ 3). Notably, Dr. Metzinger was paid $8,828.40 in back pay for adjustments to six pay periods beginning July 9, 2016, and $29,533.10 in back pay for adjustments to 22 pay periods beginning October 1, 2016. *See id.* These adjustments and payments effectuate the retroactive nature of the August 2017 compensation panel, which was made retroactive to June 26, 2016. *See* Appx50 (Richrd Tr. 59:23-60:12); *see also* Appx14. After all necessary deductions were applied, Dr. Metzinger received $55,103.16 in "back Market Pay" as a result of the August 2017 compensation panel conducted by the VA. *See* Appx98 (Wilson Decl. ¶ 4).

### C.    Salary Information Of Comparators

As a result of the 2017 compensation panel, the VA corrected Dr. Metzinger's SF-50s to indicate that she received an annual salary of $300,000.00 after June 26, 2016, and throughout 2017. *See* Appx14; Appx21. This salary made her the highest paid employee in the ophthalmology section, beginning June 2016. Appx78 (Schapira Tr. 100:3-12); Appx77 (Schapira Tr. 99:6-100:12); *see also* Am. Compl. ¶ 31. The amended complaint identifies four comparators.

---

frozen the following year. *See* Appx50 (Richard Tr. 60:13-61:09); *see also Gordon v. United States*, 903 F.3d 1248, 1254 n.4 (Fed. Cir. 2018) ("Specifically, the record reflects that the VHA pay freeze that lasted from December 2010 to December 2013 prevented Appellants from receiving market pay raises during that period that would have brought them closer to their male peers.").

### 1.    Dr. Diamond

Dr. James Diamond is a Tier I staff retina specialist at SLVHCS.  Am. Compl. ¶ 35.  He joined SLVHCS with an annual salary of approximately $235,000.  Appx59 (Richard Tr. 142:11-143:5; 143:20-21); *see also* Am. Compl. ¶ 35.  By August 2016, his annual salary was $282,878, and then increased to $288,000 in October 2016 following a step increase.  *See* Appx15, Appx16; *see also* Am. Compl. ¶ 38.  The following year, his annual salary was $289,146.  *See* Appx22; *see also* Am. Compl. ¶ 31.  Dr. Diamond's salary was higher than Dr. Metzinger's salary at this time, but only because Dr. Metzinger's salary increase had not yet been retroactively applied.  Appx60 (Richard Tr. at 164:16-23).  Following Dr. Metzinger's August 2017 compensation panel, Dr. Metzinger's salary was corrected to reflect an annual salary of $300,000 beginning in June 2016 and during 2017.  *See* Appx14; Appx21.

### 2.    Dr. Vincent

Dr. Jared Vincent was hired in June 2014 as a glaucoma specialist.  Am. Compl. ¶ 41.  His starting annual salary was $250,000.  *See* Appx9; *see also* Am. Compl. ¶ 41.  In June 2017, Dr. Vincent was terminated for unsatisfactory performance.  Appx10.  His salary at the time of his termination was $256,399.  Appx10.

### 3.    Dr. Carriere

Dr. Victor Carriere is an ophthalmologist at SLVHCS.  Appx62 (Richard Tr. 175:12-13).  In 2016, his annual salary was $250,000.  Appx19.  The following year, his annual salary was $251,482.00.  Appx23.  He also received a $10,000 performance pay bonus that year.   Appx24.  At all times, Dr. Carriere was paid less than Dr. Metzinger.  Am. Compl. ¶ 42.

### 4.    Dr. Jaramillo

Dr. Arley Jaramillo is a retina specialist that SLVHCS hired in 2012.  Schapira Tr. 99:6-

80:4-6.  He received a within-grade increase and compensation panel in September and October

2016, respectively.  Appx61 (Richard Tr. 166:22-163:8); Appx17; Appx18.  As a result, Dr.

Jaramillo's salary rose from $256,700 to $278,335.  *See* Appx18.  And beginning January 8, 2017,

Dr. Jaramillo's salary was $279,413.  *See* Appx25.

> ### D.    Dr. Metzinger's Claims and Subsequent Complaints

On May 22, 2017, Dr. Metzinger met with Darvon Thomas, an HR supervisor at SLVHCS.

Appx89–90 (Thomas Tr. 27:23-28:6); *see also* Am. Compl. ¶¶ 12-13.  In this meeting, Dr.

Metzinger expressed concerns regarding her performance ratings.  Appx92 (Thomas Tr. 30:2-12);

*see also* Am. Compl. ¶ 13.  Dr. Metzinger also expressed concerns that she was being paid less than

some of the individuals she supervised and that she had not received a pay increase.  Appx95

(Thomas Tr. 46:13-16); Am. Compl. ¶ 13.

Dr. Metzinger filed a written complaint with the Equal Employment Opportunity

Commission (EEOC) in October 2017.  *See* Appx28.  The complaint alleged sex-based and race-

based discrimination, as well as retaliation, in violation of the Equal Pay Act and Title VII of the

Civil Rights Act of 1964.  *Id.*  The EEOC later dismissed Dr. Metzinger's complaint on procedural

grounds after Dr. Metzinger filed her first complaint in the Eastern District of Louisiana, because

that matter arose from the same facts and circumstances.  *See Metzinger v. Dep't of Veterans Affs.*,

No. 2:19-CV-10614 (E.D. La. May 21, 2019); Am. Compl. ¶ 20.

## III.    Procedural History

Dr. Metzinger filed her first complaint in the Eastern District of Louisiana on May 21, 2019.

*See Metzinger v. Dep't of Veterans Affs.*, No. 2:19-CV-10614 (E.D. La. May 21, 2019).  This

complaint alleged a violation of the Equal Pay Act, 29 U.S.C. § 206.  *See* ECF No. 1.  More

specifically, Dr. Metzinger alleged that she had suffered sex-based wage discrimination since the

date of her employment at SLVHCS (in 2008).  *See* Am. Compl. ¶ 18; *see also* Compl. (ECF No. 1).

She filed a second complaint in district court in June 2020.  *See Metzinger v. Dep't of Veterans Affs.*, No. 2:20-CV-599 (E.D. La. June 18, 2020).  This complaint alleged a violation of Title VII and challenged the dismissal of her EEOC complaint.  *See id.*, ECF No. 1.  In March 2020, the EPA action (case no. 2:19-CV-10614) and the Title VII action (case no. 20-CV-599) were consolidated.  *See id.* ECF No. 25.  Before consolidation, in or around December 2019, the parties had begun settlement negotiations.  *See* ECF No. 19.  Settlement conferences were held in January 2020 and early March 2020.  *See* ECF No. 22, 24.  A third conference was scheduled for March 16, 2020.  *See* ECF No. 24.  Before that conference occurred, however, defendant moved to dismiss the EPA complaint (case no. 2:19-CV-10614) for lack of jurisdiction.  *See* ECF Nos. 27, 28.  Prior to that motion, no final agreement had been reached by the parties, nor had the Court made any findings of fact.  *See* ECF No. 112 at 8.  In May 2020, the district court granted defendant's motion to dismiss and transferred Dr. Metzinger's complaint to this Court.  *See* ECF No. 49.

Dr. Metzinger appealed, both to the United States Court of Appeals for the Federal Circuit, and to United States Court of Appeals for the Fifth Circuit.  *See Metzinger v. Dep't of Veterans Affs.*, 20 F.4th 778, 780 (Fed. Cir. 2021).  The appeal in the Fifth Circuit was dismissed for lack of jurisdiction three months later, in August 2020.  *See Metzinger v. Dep't of Veterans Affs.*, No. 20-30317 (5th Cir. Aug. 12, 2020).  While the Federal Circuit appeal was pending, the district court stayed Dr. Metzinger's Title VII matter (case no. 2:20-CV-599), and "reserve[ed] the right of any party to reopen once the appeal is resolved."  *Metzinger v. Dep't of Veterans Affs.*, No. 2:20-CV-599, ECF No. 10.  In December 2021, the Federal Circuit appeal was resolved, and the Circuit

affirmed the transfer of Dr. Metzinger's EPA claim to this Court.[4]  *See id.* at 786.  Dr. Metzinger's

Title VII case remains administratively closed.  *Metzinger v. Dep't of Veterans Affs.*, No. 2:20-CV-

599, ECF No. 10.

Dr. Metzinger's EPA action was transferred to this Court in March 2023 and Dr. Metzinger

filed an amended complaint the following month.  *See* ECF Nos. 93, 98.  The amended complaint

asserts two counts.  In the first count, Dr. Metzinger again alleges that she had experienced sex-

based wage discrimination since the date of her initial employment with the VA in 2008, and that

she had not received any merit-based or market-based pay increases since that time.  *See* Am.

Compl. ¶¶ 18, 30.  Count two alleges that the VA retaliated against her because of her

complaints to human resources, the EEOC, and Federal court.  *See* Am. Compl. ¶¶ 47-49.

In August 2023, defendant moved to dismiss for lack of jurisdiction.  *See* ECF No.

106.  The motion explained that, because the Fair Labor Standards Act (FLSA) establishes a

two-year statute of limitations for EPA claims (and a three-year limitations period for willful

violations), her amended complaint should be dismissed as untimely.  *See id.* at 9.  The

motion further explained that, because Dr. Metzinger had not plausibly alleged willfulness,

and because she had not plausibly alleged that any male employee was paid more than her

during the relevant timeframe, her amended complaint had failed to state a claim for relief

under the EPA.  *Id.* at 11.  Further, the motion explained that this Court lacked jurisdiction to

entertain count two of the amended complaint because the allegation of retaliation sounds in

tort.  *Id.* at 12.

---

[4]  As reflected in the Federal Circuit's decision, the United States agreed with Dr. Metzinger
that, pursuant to the grant of jurisdiction contained in the Fair Labor Standards Act, the district court
possesses jurisdiction to entertain Dr. Metzinger's Equal Pay Act claim, but the court of appeals
disagreed.  *See Metzinger*, 20 F.4th at 781

On October 25, 2024, the Court granted in part and denied in part defendant's motion to dismiss. *See* Order (ECF No. 124). More specifically, the Court transferred Dr. Metzinger's retaliation claim to district court and dismissed any portion of her EPA claim involving paychecks issued outside the three-year statute of limitations period for willful violations. *See id.* at 2. The Court also ordered the parties to continue settlement negotiations. *See id.* at 29. The parties endeavored to do so, but those efforts were unfruitful. *See* ECF Nos. 121, 122, 125.

## ARGUMENT

### I.    Standards Of Review

Summary judgment is "a salutary method of disposition 'designed to secure the just, speedy and inexpensive determination of every action.'" *Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). It is proper when no genuine issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(b); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Facts are material only if they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Substantive law provides the basis to identify the material facts. *Embrey v. United States*, 17 Cl. Ct. 617 (1989).

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The non-moving party is then obliged to "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof . . . at trial." *Id.* at 322. As the United

States Court of Appeals for the Federal Circuit emphasizes in *Sweats Fashions*:  "the burden is

not on the movant to produce evidence showing the absence of a genuine issue of material fact."

833 F.2d at 1563 (emphasis in original).  Rather, "the burden on the moving party may be

discharged by 'showing'—that is, pointing out to the [Court of Federal Claims]—that *there is an*

*absence of evidence to support the non-moving party's case*."  *Id.*  (emphasis in original)

(quoting *Celotex*, 477 U.S. at 325).  The burden then shifts to the nonmoving party to establish,

by going beyond the pleadings, that there is a genuine issue as to facts material to the non-

moving party's case.  *Celotex*, 477 U.S. at 331

## II.    The Government Is Entitled To Summary Judgment

### A.    The Equal Pay Act

The Equal Pay Act (EPA) was enacted in 1963 as an amendment to the Fair Labor

Standards Act (FLSA) and was extended from private industry to the Federal Government in

1974.  29 U.S.C. §§ 201, 203(e)(2).  The EPA provides that an employer may not discriminate

between employees on the basis of sex by paying wages "at a rate less than the rate at which he

pays wages to employees of the opposite sex . . . for equal work on jobs the performance of

which requires equal skill, effort, and responsibility, and which are performed under similar

working conditions[.]"  *Id.* § 206(d)(1).  The statute provides four enumerated exceptions,

namely, "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by

quantity or quality of production; or (iv) a differential based on any other factor other than sex."

*Id.*

To establish a *prima facie* case pursuant to the EPA, plaintiffs must establish that "(1) a

covered employer pays less wages to the plaintiff[s] than to employees of the opposite sex, (2)

for work that requires the same skill, effort and responsibility, and (3) that is performed under

similar circumstances." *Behm v. United States*, 68 Fed. Cl. 395, 399 (2005) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)); *see also Moore v. United States*, 66 F.4th 991, 996 (Fed. Cir. 2023). Once plaintiff has established a prima facie case, "the burden of proof shifts to the employer to prove that the differential is made pursuant to one of the four affirmative defenses." *Boyer v. United States*, 97 F.4th 834, 839 (Fed. Cir. 2024) (citing *Corning Glass*, 417 U.S. at 196–97). "If the employer successfully establishes that the differential was made pursuant to one of the four defenses, the plaintiff may counter that the affirmative defense is merely pretextual." *Id.* citing (*Ryduchowski v. Port Auth. of N.Y. & N.J.*, 203 F.3d 135, 142 (2d Cir. 2000)).

### B. Dr. Metzinger Cannot Prove A Prima Facie Case For Back Pay Under the EPA Because She Was Paid More Than The Male Comparators

In the Court's ruling partially granting defendant's motion to dismiss, the Court dismissed Dr. Metzinger's "wage-discrimination claims covering paychecks issued before May 21, 2016." *See* Order (ECF No. 124) at 2. Because Dr. Metzinger became the highest-paid employee in the ophthalmology section beginning June 26, 2016, Dr. Metzinger cannot establish a prima facie case for back pay under the EPA for the overwhelming majority of the relevant time period.

The parties agree that Dr. Metzinger became the highest paid employee in the ophthalmology section as a result of the August 2017 compensation panel. *See* Schapira Tr. 100:3-12; *see also* Am. Compl. ¶ 31 ("At the Market Panel meeting, the panel members concluded that Dr. Metzinger was to be awarded nearly 40,000 dollar pay increase, at one time, bringing her pay to 300,000 dollars, *making her the highest paid in the section . . .*") (emphasis added). The August 2017 compensation panel resulted in a salary increase of approximately $39,000 (from an annual salary of $261,745 to $300,000). *See* Appx20–21; *see also* Appx27.

Corrected SF-50s confirm that this salary increase was to be made retroactive, beginning June 26, 2016. *See* Appx14; Appx21.

Payroll data confirm that DFAS began processing and disbursing the retroactive back pay shortly after the August 2017 compensation panel. *See* Appx97–98; Appx100–102. For example, on October 6, 2017, just a few weeks after the August 2017 compensation panel, DFAS paid Dr. Metzinger $8,723.30 for six pay periods beginning July 8, 2017. Appx98 (Wilson Decl. ¶ 3). The audit conducted by DFAS confirms this payment.[5] *See* Appx100. Other payments confirm that the disbursements covered pay periods dating back to June 26, 2016, as the parties intended. For example, on January 12, 2018, DFAS paid Dr. Metzinger $8,828.40 for adjustments to six pay periods beginning July 9, 2016.[6] *Id.* And on October 20, 2017, DFAS paid Dr. Metzinger $29,533.10, for adjustments to twenty-two pay periods beginning October 1, 2016. *Id.* A summary of Dr. Metzinger's retroactive market pay is as follows:

| Date of Payment | Period Covered (Number of Pay Periods Covered) | Amount |
|---|---|---|
| October 6, 2017 | July 8, 2017 through September 16, 2017 (6) | $8,723.30 |
| October 20, 2017 | October 1, 2016 through September 30, 2017 (22) | $29,533.10 |

---

[5] The first two columns of the audit read: "Pay Period" and "Adjustment Date." *See* Appx100. For the 09/30/2017 Pay Period, there are six "Adjustment Date" entries, with corresponding pay periods beginning July 8, 2017, and concluding September 16, 2017. *Id.* Five of these adjustments reflect market pay of $1,471.40, as the "Market Pay" column indicates. One of the adjustments reflect market pay of $1,366.30. Those six adjustments together equal $8,723.30. Taking the above information together, this indicates that, for the Pay Period ending 09/30/2017, Dr. Metzinger was paid $8,723.30 in retroactive back pay for six pay periods beginning July 8, 2017, and concluding September 16, 2017. Dr. Metzinger was paid this amount one week after the end of this pay period, on October 6, 2017. *See* Appx98 (Wilson Decl. ¶ 3).

[6] June 26, 2016 was a Sunday. The pay period ended the following Saturday (on July 9, 2016).

| January 12, 2018 | July 9, 2016 through September 17, 2016 (6) | $8,828.40 |
| April 5, 2019 | January 20, 2018 through March 16, 2019 (31) | $1,362.76 |
| May 17, 2019 | July 7, 2018 through April 27, 2019 (22) | $4,897.20 |
| November 1, 2019 | July 9, 2016 through January 6, 2018 (40) | $1,758.40 |
| | | *Total: $55,103.16* |

*See* Appx100–102; *see also* Appx98 (Wilson Decl. ¶ 3).  Accordingly, there is no dispute that the back pay paid to Dr. Metzinger resulting from the August 2017 compensation panel reaches back to June 26, 2016.  DFAS ultimately paid Dr. Metzinger $55,103.16 in "retroactive Market Pay."   Appx98 (Wilson Decl. ¶ 3.

The evidence therefore demonstrates that, as a result of the August 2017 compensation panel, Dr. Metzinger's salary was $300,000 beginning June 26, 2016.  Appx98 (Wilson Decl. ¶ 2); *see also* Appx14; Appx21.  As a Tier II ophthalmologist, this salary is just $10,000 shy of the *maximum* salary she could have received.  *See* Appx3.  More important, this salary made Dr. Metzinger the highest-paid employee in the section.  Appx78 (Schapira Tr. 100:3-12); *see also* Am. Compl. ¶ 31.  This evidence demonstrates that Dr. Metzinger was paid more than the male comparators.  In 2016 and 2017, Dr. Diamond's salary was $288,000 and $289,146, respectively.  *See* Appx16, Appx22.  During those same two years, Dr. Jaramillo's salary was $278,335 and $279,413, respectively.  *See* Appx18, Appx25.  Dr. Carriere's 2016 salary was $250,000; his 2017 salary was $251,482.00 (plus $10,000 in a performance pay bonus). Appx19, Appx23, Appx24.  And at the time of Dr. Vincent's termination in June 2017, his salary was $256,399.  *See* Appx10.  In short, no male employee in the ophthalmology section of SLVHCS, and no comparator that Dr. Metzinger has identified, received a salary commensurate with the salary that Dr. Metzinger received.

14

Dr. Metzinger cannot establish that the VA paid her "at a rate *less than* the rate at which [it] pays wages to employees of the opposite sex[.]" 38 U.S.C. § 206(d)(1) (emphasis added). For this reason, she cannot establish an entitlement to back pay under the EPA. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 209–10 (1974) (discussing the "illegal practice of paying women *less than* men for equal work" (emphasis added)); *see Brooks v. United States*, 101 Fed. Cl. 340, 344 (2011) ("Plaintiff has the burden to demonstrate that she was paid less than Mr. Propster for a job that required substantially equal skill, responsibility, and effort."); *Jordan v. United States*, 122 Fed. Cl. 230, 241 (2015) ("To establish her prima facie case, Ms. Jordan has selected Mr. A as her comparator to demonstrate that she was paid less than a male for performing equal work.").

The Government is not aware of any case in this Court in which the plaintiff in an EPA case is more highly paid than comparators of the opposite sex. Courts that have addressed this matter uniformly agreed that, without proving unequal payment, an EPA claim must fail. *See Ingram v. Brink's, Inc*., 414 F.3d 222, 233 (1st Cir. 2005) (affirming grant of summary judgment in favor of the employer when evidence showed that "[plaintiff] was never paid less than Hardy for the same job—she never took the job—and Hardy was offered more after Ingram had already left the company (quite possibly because the company got the message that they were not offering enough)"); *Fredriksen v. Consol Energy Inc*., No. 2:18-CV-00379-MJH, 2019 WL 2108099, at *4 (W.D. Pa. May 14, 2019) ("Without proof of unequal payment, a wage discrimination claim under EPA or Title VII fails."); *Marcellin v. Kupferer*, No. 02-95-A, 2002 WL 32356683, at *3 (E.D. Va. July 19, 2002), *aff'd*, 60 F. App'x 513 (4th Cir. 2003) ("Since [plaintiff] was not paid less than her comparator, she cannot make out a prima facie case under the EPA."); *Mauze v. CBS Corp.*, 340 F. Supp. 3d 186, 207 (E.D.N.Y. 2018) ("Furthermore,

CBS has demonstrated that Mauze was not in fact paid less than other Managers at CBS, specifically, those she identifies as comparators. . . Summary judgment is warranted on Mauze's Title VII, EPA, and New York Labor Law compensation discrimination claims."); *Spears v. Louisiana*, 767 F. Supp. 2d 629, 643 (M.D. La. 2011) ("Spears has no viable claim against LCLE under the Equal Pay Act because she has not established that she has ever actually been 'paid less' than him."); *Bertotti v. Philbeck, Inc.*, 827 F. Supp. 1005, 1010 (S.D. Ga. 1993) ("Bertotti's actual wages received were, therefore, greater than either comparator, and her EPA claim must fail."); *True v. New York State Dep't of Corr. Servs.*, 613 F. Supp. 27, 31 (W.D.N.Y. 1984) ("[Plaintiff] has neither contended nor alleged that she was actually paid at a lower rate than male employees. Therefore she cannot possibly establish a claim under the Equal Pay Act.") (citing *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981)); *see also McEwen v. MGM Grand Detroit*, No. 03-73039, 2006 WL 83476, at *7 (E.D. Mich. Jan. 12, 2006) ("Plaintiff has not cited any authority for the proposition that a wage discrimination plaintiff can establish a prima facie case without showing that he was paid less than the allegedly comparable employee at all times.").

Both *Hein v. Oregon College of Education*, 718 F.2d 910 (9th Cir. 1983), and *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 342 (4th Cir. 1994), support this conclusion. *See* Opinion (ECF No. 124) at 26 (citing *Hein* and *Brinkley-Obu*). In *Hein*, the Ninth Circuit reviewed a district court decision finding the employer, Oregon College of Education (OCE) liable for sex-based wage discrimination in violation of the EPA. *See* 36 F.3d at 910. One group of plaintiffs, female physical education teachers, had established their prima facie cases by comparing their jobs and salaries with that of Mr. James Boutin, the men's varsity basketball coach. *See id.* at 914. Each of these plaintiffs—Dr. Wilma Hein, Dr. Lenore Campbell, and Ms.

Jacquelyn Rice—earned less than Mr. Boutin.[7]  *See id.* at 918.

As relevant to this case, the Ninth Circuit held that the district court had arbitrarily excluded one of Dr. Campbell's proffered comparators because that male employee earned less than Dr. Campbell.  *Id.* at 916.  Such evidence, the court held, is relevant in evaluating wage discrimination.  *Id.*  But it is not alone sufficient.  That is, the Ninth Circuit did not hold that an EPA plaintiff can prove his or her claim by identifying a comparator with a marginally lower salary (even if they perform considerably fewer responsibilities).  Rather, the Ninth Circuit called it "axiomatic" that Dr. Campbell's claim would fail "[i]f it should turn out that [she] earns more than males performing substantially equal work."  *Id.* at 916.  Applying *Hein*'s reasoning to this case (along with the plain text of the statute), Dr. Metzinger's claim for back pay must fail— she earns more than all the male comparators she has identified.

*Brinkley-Obu v. Hughes Training, Inc.* 36 F.3d 336, 342 (4th Cir. 1994), compels the same result.  Like *Hein*, *Brinkley-Obu* involved appellate review of a judgment in favor of the plaintiff, Sharon Brinkley-Obu.  *See id.* at 338–39.  During all relevant times, Ms. Brinkley-Obu had earned less than two male comparators.  *See id.* at 342.  She also earned less than a third male comparator, Jeffrey Parnes, during some relevant times, but marginally more than him during another time (beginning September 1992).  *See id.*  But unlike Ms. Brinkley-Obu, Dr. Metzinger cannot identify any male employee that earned more than she during any relevant time, when considering the already-paid back pay.

The focus of Dr. Metzinger's complaint is clear: she alleges that she did not receive the

---

[7]  Ultimately, the Ninth Circuit would vacate and remand to the district court with instructions to determine whether plaintiffs can show that they have jobs substantially similar to those of the male comparators.  *See id.* That portion of the court's decision is not immediately relevant to this case.

market pay increase until January 2018, in violation of the EPA. *See, e.g.*, Am. Compl. ¶¶ 32, 33. She describes this backpay as "the subject" of this lawsuit. Am. Compl. ¶ 33 ("Dr. Metzinger has . . . never received any backpay for the years of the Equal Pay Act violation which is the subject of her EEO claim and this lawsuit[.]"). But the "subject" of this suit is now settled; as we have explained, the August 2017 market pay panel was made retroactive to June 2016, and Dr. Metzinger has received the associated back pay. *See* Appx97–98. Dr. Metzinger will undoubtedly direct this Court's attention to the one year before the August 2017 market pay panel during which she earned less than a male colleague, Dr. Diamond. But this does not change the fact that she has received the applicable back pay, and that this back pay is the focus of her complaint. *See* Am. Compl. ¶ 33 (alleging that "[s]he has also not received . . . the back pay owed to her based on the Market Pay Panel award, namely that pay between June 16, 2016 and June 26, 2017."). At most, Dr. Metzinger can argue that her biannual market pay panel was not timely convened (and occurred one year too late). But this does not align with Dr. Metzinger's complaint and, at any rate, is insufficient to establish a prima facie case pursuant to the EPA.

At bottom, the EPA statute prohibits paying employees of one sex "at a rate *less than* the rate at which [it] pays wages to employees of the opposite sex[.]" 38 U.S.C. § 206(d)(1). The evidence demonstrates that Dr. Metzinger cannot prove that this occurred. Indeed, for all pay periods after June 26, 2016, Dr. Metzinger was the highest paid employee in the section.

## **CONCLUSION**

For the foregoing reasons, we respectfully request that the Court grant our motion for summary judgment.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

Of Counsel:                                    */s/ Reginald T. Blades, Jr.*
                                               REGINALD T. BLADES, Jr.
RAQUELLE BADEAUX-PHILLIPS               Assistant Director
Trial Attorney
Office of General Counsel
Veterans Affairs                        */s/ Patrick S. Angulo*
                                               PATRICK S. ANGULO
                                               Trial Attorney
                                               Commercial Litigation Branch
                                               Civil Division
                                               Department of Justice
                                               P.O. Box 480
                                               Ben Franklin Station
                                               Washington, D.C. 20044
                                               Telephone: (202) 507-6083
                                               Patrick.S.Angulo@usdoj.gov

April 7, 2025                                   *Attorneys for Defendant*

19